**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

|  |  |
|---|---|
| AIM GROUP, LLC d/b/a REVE BODY SCULPTING and AMY LOUISE STONE, <br><br> Plaintiffs, <br><br> v. <br><br> BTL INDUSTRIES, INC. and MEGHAN AUSTIN, <br><br> Defendants. | Civil Action No. 1:26-cv-12129-AK |

**DEFENDANT BTL INDUSTRIES, INC.'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT**

Plaintiffs' claims arise from their alleged inability to attract customers to their business using two BTL therapeutic devices they purchased during an arm's-length transaction in August 2022. But their purported disappointment is not actionable, and all of Plaintiffs' claims in their Amended Complaint fail both substantively and procedurally as a matter of law.

Plaintiffs' Kentucky Consumer Protection Act claim (Count I) is barred by the parties' choice-of-law provision selecting Massachusetts law. Count I also fails substantively because Plaintiffs—who purchased the devices for commercial use—do not qualify as "consumers" under the KCPA and therefore lack standing to assert a claim under KRS 367.170. Plaintiffs' fraud and negligent misrepresentation claims (Counts II and III) fail to satisfy Federal Rule 9(b)'s heightened pleading requirements and, in any event, rely on non-actionable statements of puffery, opinion, and projection. Finally, because Plaintiffs lack any viable substantive cause of action, their request for declaratory relief (Count IV) must also be dismissed.

## FACTUAL BACKGROUND

BTL, a Delaware corporation headquartered in Massachusetts, manufactures and sells devices for a variety of aesthetic and therapeutic uses. Dkt. 84 ("Am. Compl.") ¶¶ 6, 9. Amy Louise Stone is an owner and operator of Reve Body Sculpting, a weight loss center in Louisville, Kentucky. *Id.* ¶¶ 4–5, 11. On August 12, 2022, Ms. Stone spoke with BTL representative Meghan Austin about purchasing certain BTL equipment. *Id.* ¶¶ 15–16, 19. Plaintiffs claim that Ms. Austin made the following representations during an August 12, 2022 meeting:

a. Emsculpt® is selling so well and making customers good money;
b. Emsculpt NEO® is the holy grail and, like death and taxes, Emsculpt NEO® is a certainty in life;
c. Providers payoff the Emsculpt® and/or Emsculpt NEO® within a year or less because the equipment brings in so many customers that it essentially pays for itselfs [sic];
d. Emsculpt® and/or Emsculpt NEO® is the number one requested service in all aesthetic and wellness right now. It is the number one purchase piece of equipment right now in all of aesthetics. It is a very hot brand because patients are asking for it. So, from that direct-to-consumer level, people are hearing and reading and seeing about Emsculpt NEO®;
e. Emsculpt® and/or Emsculpt NEO® brings in 51% more new patients to practices;
f. If providers wait to purchase the equipment and provide services using BTL's equipment, those providers could be missing out on $50,000 to $60,000 per month in sales;
g. Providers servicing customers with BTL equipment near Ms. Stone are making good money;
h. Plaintiffs will make 2.5 times the investment on one system before needing to replace the applicators and the BTL equipment will make Plaintiffs so much money that the cost of the applicators will be like "chump change";
i. The price of each piece of equipment will go up starting January 2023 by at least $50,000;
j. BTL is doing $30 million in marketing;
k. BTL will provide Plaintiffs with a billboard to market Plaintiffs' BTL equipment;
l. Ms. Austin is personally invested in Plaintiffs' success and will make it her personal mission to help with Plaintiffs' marketing to ensure that Plaintiffs are profitable;
m. BTL will provide a bus tour that will bring Plaintiffs loads of customers.

*Id.* ¶¶ 19(a–m); *see also id.* ¶¶ 69(a–k) (realleging many of the same representations and other statements purportedly made by Ms. Austin). During that August 12, 2022 meeting, Plaintiffs purchased two devices from BTL: the Emsculpt NEO® and the Cellutone®. *Id.* ¶ 21.

For both devices, Plaintiffs agreed to BTL's Terms and Conditions of Sale (hereinafter the "Sales Agreement"). Am. Compl., Ex. A. The Sales Agreement contains numerous terms, including a choice-of-law provision (Massachusetts). *See id.* at 3. The Emsculpt NEO purchase also included a voluntary Minimum Advertised Pricing Policy (the "MAP Program") through which BTL provides various benefits in exchange for the customer's agreement not to advertise below a minimum price-per-treatment with the Emsculpt Neo devices. *Id.* "If [a] Customer participates" in the MAP Program, BTL provides free device service coverage in the second and third years; BTL includes the customer in a provider directory; and BTL charges reduced rates for replacement component parts. *Id.* Nonparticipating customers do not receive the same incentives. *Id.* The MAP Program did not include the Cellutone device Plaintiffs purchased. *See generally* Sales Agreement.

Sometime in 2023, Plaintiffs "chose to advertise the treatment sessions for less than the required MAP[.]" Am. Compl. ¶ 29 (emphasis added). Without any factual elaboration, Plaintiffs claim that BTL and its representative's purported misrepresentations caused Plaintiffs "to sustain serious injury and damages to its business reputation and operations." *Id*. ¶ 61.

## STANDARD OF REVIEW

Under Federal Rule 12(b)(6), any claim that fails "to state a claim upon which relief can be granted" should be dismissed. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In deciding a Rule 12(b)(6) motion to dismiss, the court takes as true the factual averments in the complaint but must "eschew any reliance on bald assertions, unsupportable conclusions, and opprobrious epithets." *Alt. Sys. Concepts, Inc. v. Synopsys, Inc.*, 374 F.3d 23, 29 (1st Cir. 2004) (quotation omitted). Dismissal is appropriate when the pleadings lack "factual allegations, either direct or inferential, respecting

3

each material element necessary to sustain recovery under some actionable legal theory." *The Hertz Corp. v. Enterprise Rent-a-Car Co.*, 557 F. Supp. 2d 185, 196 (D. Mass. 2008) (quotation omitted).

And for claims alleging fraud, the Federal Rules impose a higher burden. A party alleging fraud "must state with particularity the circumstances constituting fraud[.]" Fed. R. Civ. P. 9(b). This requires, at a minimum, that a plaintiff specify "(1) the allegedly fraudulent statements; (2) the identity of the speaker; (3) where and when the statements were made; and (4) why the statements were fraudulent." *In re Allaire Corp. Secs. Litig.*, 224 F. Supp. 2d 319, 325 (D. Mass. 2002). In other words, the pleading must "go beyond mere allegations based upon information and belief, and specify the source of the information and the reasons for the belief." *Id*.

### ARGUMENT

In their post-transfer pleadings, Plaintiffs have omitted all federal causes of action from their Amended Complaint, relying solely on four state-law claims: Count I – Violation of KRS 367.170, Kentucky's Consumer Protection Act ("KCPA"); Count II – Fraud; Count III – Negligent Misrepresentation; and Count IV – Declaratory Relief pursuant to KRS 418.040. Ignoring the many irrelevant allegations leftover from Plaintiffs' abandoned antitrust claims,[1] Plaintiffs' remaining assertions focus on theories of fraud and deceptive. *See* Am. Compl. ¶¶ 16–19, 44; *cf. id.* ¶¶ 25, 38–43, 47 (re-alleging conclusory claims of price discrimination, vertical price restraints, and marketplace manipulation despite omitting all antitrust claims). Because those scarce factual allegations relevant to Plaintiffs' claims are procedurally and substantively insufficient to state any

---

[1] Plaintiffs originally filed this action in the Western District of Kentucky alleging several claims under Kentucky law and federal antitrust laws. *See* Dkt. 1. After BTL and other defendants moved to enforce their respective forum-selection clauses, the court transferred this action to the District of Massachusetts. *See* Dkt. 71.

4

cause of action, the Court should dismiss Plaintiffs' claims with prejudice.

### A. Plaintiffs' Kentucky Consumer Protection Claim (Count I) is Contractually Barred and Substantively Deficient Under Kentucky's Consumer Protection Act.

Plaintiffs' state-law claims are subject to the parties' agreed-to choice-of-law clause: "This Agreement shall be governed by and construed in accordance with the laws of the Commonwealth of Massachusetts." Am. Compl., Ex. A at 3. It is well-settled law in Massachusetts that "courts routinely enforce choice-of-law provisions unless the law chosen violates established public policy or bears no reasonable relationship to the contractual transaction between the parties." *Lambert v. Kysar*, 983 F.2d 1110, 1118 (1st Cir. 1993). Despite the controlling choice-of-law provision, Plaintiffs' Amended Complaint retains their original claim under the Kentucky Consumer Protection Act. This claim is barred by the choice-of-law clause Plaintiffs agreed to in the Sales Agreement's terms. *Cf.* Am. Compl. ¶ 3 (conceding the forum-selection clause of the Sales Agreement's "Governing Law; Jurisdiction" section required Plaintiffs bring "all disputes 'arising out of, or relating to, this Agreement to a court in Boston, Massachusetts'"). The Court should dismiss Plaintiffs' KCPA claim for this reason alone.

In addition to being barred by the parties' Sales Agreement, Plaintiffs' KCPA claim also substantively fails because they lack standing to pursue a consumer protection claim. The KCPA provides a private right of action ***only*** for suits related to *consumers* who purchased goods or services "primarily for personal, family, or household purposes." KRS 367.220(1); *accord 859 Boutique Fitness, LLC v. CycleBar Franchising, LLC*, 699 F. App'x 457, 461 (6th Cir. 2017) (affirming district court's dismissal of plaintiff's consumer protection claim and finding plaintiff's argument that the KCPA permits actions related to commercial goods was "without merit"); *Holmes v. Lexington-CJD, LLC*, 807 F. Supp. 3d 713, 724 (E.D. Ky. 2025) (finding plaintiff lacked standing to sue under the KCPA regarding a vehicle he purchased for investment purposes because,

"[n]otwithstanding the Act's broad construction, the KCPA does not apply to purchases made for investment or business purposes"). Plaintiffs, however, are plainly not "consumers" as defined by Kentucky law.

Plaintiffs cannot in good faith dispute that they purchased the BTL devices for commercial use at their weight loss center. *See, e.g.*, Am. Compl. ¶¶ 11, 29, 61 (alleging Plaintiffs operate a weight loss center, purchased the BTL devices for use at the weight loss center, that their claims center around their purported inability "to get business" for those devices, and alleged damage to their "business reputation and operations"). Because Plaintiffs admittedly purchased the BTL devices for commercial purposes, they are not a "consumer" and have no standing to pursue a KCPA claim. *See, e.g.*, *859 Boutique Fitness, LLC*, 699 F. App'x at 461; *Powerscreen USA, LLC v. D&L Equip., Inc.*, 661 F. Supp. 2d 705, 716 (W.D. Ky. 2009) (explaining that "KRS 367.220 limits private rights of action . . . to purchasers or lessors of goods or services primarily for personal, family, or household use," and finding claims related to the purchase of "equipment used in large commercial operations" was "not redressable" under the statute); *Gooch v. E.I. DuPont de Nemours & Co.*, 40 F. Supp. 2d 857, 862 (W.D. Ky. 1998) (finding that plaintiff did not have a private right of action because it purchased the products for a commercial purposes in plaintiff's farming business rather than personal, family, or household purposes). The Court should dismiss Count I because, without standing, Plaintiffs cannot state a viable KCPA claim.

To be clear, even if Plaintiffs had instead pursued a claim under Massachusetts's unfair deceptive practice's statute, that claim would fail because the alleged conduct did not occur "primarily and substantially within the commonwealth [of Massachusetts]." Mass. Gen. Laws, ch. 93A § 11; *see Mark Breiner DDS, LLC v. BTL Industries, Inc.*, No. 24-12413-FDS, 2026 WL 114405, at *3–5 (D. Mass. Jan. 15, 2026) (dismissing similar statutory claim against BTL because

6

the plaintiffs' allegations showed "the center of gravity of the circumstances that give rise to the claim" was outside Massachusetts). The Court should thus dismiss Count I with prejudice because it substantively fails as a matter of law under both Kentucky and Massachusetts law.

Accordingly, the Court should dismiss Plaintiffs' barred and deficient KCPA claim with prejudice.

### B. Plaintiffs' Fraud and Negligent Misrepresentation Claims Fail Because Plaintiffs Have Not Alleged Actionable Misrepresentations (Counts I–III).[2]

Under Massachusetts law, a plaintiff must show "that the defendant made a false representation of a material fact with knowledge of its falsity for the purpose of inducing the plaintiff to act thereon, and that the plaintiff relied upon the representation as true and acted upon it to [its] damage." *Danca v. Taunton Sav. Bank*, 429 N.E.2d 1129, 1133 (Mass. 1982) (cleaned up). Negligent misrepresentation requires nearly the same elements, *see Cabi v. Boston Children's Hospital*, 161 F. Supp. 3d 136, 163 (D. Mass. 2016), but it also requires the party supplying the "allegedly inaccurate information [] owe a duty of care to the person receiving it," *Breiner*, 2026 WL 114405, at *15.

These misrepresentation claims are also subject to the heightened pleading requirements in Rule 9(b). In addition to "specify[ing] the who, what, where, and when of the allegedly false or fraudulent representation," *Alt. Sys. Concepts, Inc.*, 374 F.3d at 29, Rule 9(b) requires Plaintiffs to specifically allege "the basis for inferring scienter" by setting forth "specific facts that make it reasonable to believe that defendant knew that a statement was materially false or

---

[2] Plaintiffs' KCPA claim (Count I) also relies on the same misrepresentations as their Fraud and Negligent Misrepresentation claims. *See* Am. Compl. ¶ 64 (alleging "Defendants' actions described above, including but not limited to Defendants' misrepresentations of material fact listed within paragraph 16-19," constitute violations of the KCPA). Even if Plaintiffs had standing to pursue a KCPA claim (they do not, *see supra*), the Court should limit their claims to only actionable claims of misrepresentation.

misleading," *Ivanowski v. Viv Auto Pilot*, No. 25-cv-40114-MRG, 2026 WL 915088, at *3 (D. Mass. Mar. 31, 2026) (quotation omitted). Plaintiffs' conclusory claims of intentional and negligent misrepresentation fail to satisfy Rule 9(b)'s heightened pleading requirements.

Plaintiffs omit any facts alleging how BTL, or its representatives, knew or should have known that the statements were false. *See Holland v. Select Portfolio Servicing, Inc.*, 299 F. Supp. 3d 271, 275–76 (D. Mass. 2018) (dismissing fraud claims under Rule 9(b), noting that "courts have uniformly held inadequate a complaint's general averment of the defendant's 'knowledge' of material falsity, unless the complaint also sets forth specific facts that make it reasonable to believe that defendant knew that a statement was materially false or misleading" (quotation omitted)). For example, Plaintiffs provide no detail as to why the BTL's or Ms. Austin's statements were false, much less knowingly false, including but not limited to the alleged statements that "BTL is doing $30 million in marketing," Am. Compl. ¶ 19(j), or that "BTL will provide a bus tour that will bring Plaintiffs loads of customers," *id.* ¶ 19(m), or that BTL would "provide Plaintiffs with a billboard to market Plaintiffs' BTL equipment," *id.* ¶ 19(k). *See generally id.* ¶¶ 19(a–m) (alleging various statements of opinion, puffery, and projection without providing any factual basis for why these statements were false). This dearth of factual allegations falls short of both Rule 8's plausibility requirements and Rule 9(b)'s heightened particularity standard.

As further example, Plaintiffs allege that BTL, through Ms. Austin, represented that "Plaintiffs would be purchasing a used Emsculpt NEO® demo, and, as a result, Plaintiffs would be purchasing the equipment at a discounted price and would be receiving the Cellutone for 'free.'" Am. Compl. ¶¶ 16, 69(a). Plaintiffs never once plausibly explain how or why this statement was false, much less how Ms. Austin (or BTL) knew it was false at the time it was made. Instead, Plaintiffs make the conclusory allegation that they "discovered that these representations were

false" because Ms. Stone "spoke to another provider" well over a year later "who advised [her] that BTL offered to sell the provider both the Emsculpt NEO® and Emsella® for a price that was about $20,000.00 less than what" Plaintiffs paid for the Emsculpt NEO® and Cellutone devices. *Id.* ¶ 17. Plaintiffs' allegations lack any plausible or particular facts explaining how this later-dated purchase of a different set of BTL devices made BTL's or Ms. Austin's representations about Plaintiffs' transaction false, much less explain how BTL knew Ms. Austin's statements were false when made. Plaintiffs' conclusory, one-size-fits-all theory of scienter cannot satisfy Rule 9(b). *Cf. Holland v. Piedmont Airlines, Inc.*, No. 2:25-cv-00478-SDN, 2026 WL 705335, at *9 (D. Me. Mar. 13, 2026) (dismissing fraud claims because "the mere fact that [defendant] regularly conducted interviews and engaged in payroll-related tasks [did] not support an inference that she knowingly or recklessly made false representations" in a job interview).

Even if Plaintiffs' misrepresentation claims were well-pled pursuant to Rule 9(b) (they are not), they also substantively fail because they do not allege any fraudulent misrepresentations of fact. In the business context, mere puffery is not sufficient to be an actionable fraud. *See, e.g.*, *Wasson v. LogMeIn, Inc.*, 496 F. Supp. 3d 612, 633–634 (D. Mass. 2020) (dismissing claims because statements by executives about the company's "strong" revenue, "stronger-than-expected cash flow," and being "encouraged by the early results" were non-actionable puffery); *see also In re Bos. Sci. Corp. Sec. Litig.*, No. CIV.A. 10-10593-DPW, 2011 WL 4381889, at *12 (D. Mass. Sept. 19, 2011), *aff'd*, 686 F.3d 21 (1st Cir. 2012) (statements that the company's sales force was "stable, large, experienced," and "very successful" were puffery). In addition, "[m]ere opinions, predictions about future events, and statements that are true when made, are not actionable as misrepresentations[.]" *In re Fidelity/Apple Securities Litig.*, 986 F. Supp. 42, 49 (D. Mass. 1997); *see also Amorim Holding Financeria, S.G.P.S., S.A. v. C.P. Baker & Co.*, 53 F. Supp. 3d 279, 305

(D. Mass. 2014) (dismissing misrepresentation claims because a claim that an investment had "'lots of potential this year' [was] a future forecast akin to a prediction, not a promise"); *Rodowicz v. Mass. Mut. Life Ins. Co.*, 192 F.3d 162, 175 (1st Cir. 1999) (affirming dismissal of misrepresentation claims because mere "false statements of opinion, of conditions to exist in the future, or of matters promissory in nature" are not fraudulent (quotation omitted)).

Each of the alleged statements by BTL or its representative in August 2022 falls into (and often overlaps between) these non-actionable varieties of representations. The vast majority of the alleged representations are patently puffery. *See, e.g.*, Am. Compl. ¶¶ 19(b), (d), (h), and (m) (alleging optimistic puffery from BTL representatives, including statements describing BTL devices as the "holy grail," a "very hot brand," that their revenue would make costs for consumables "chump change," and the potential for "loads" of customers). The rest are either statements of opinion, predictions, or future performance. *See, e.g.*, *id.* ¶¶ 19(e), (f), (i) (alleging projections of potential customer return, potential revenue, equipment price increases); *see also id.* ¶¶ 18 & 69(h) (alleging Ms. Austin represented that "Defendants have not and will not sell or attempt to sell BTL equipment to anyone within an approximate 20-mile radius" despite Plaintiffs purportedly knowing there were "[p]roviders servicing customers with BTL equipment near Ms. Stone," *id.* ¶ 19(g), and containing a representation of future intent). These statements are quintessential examples of the type of "commercial optimism," "sales talk," and "puffery" that courts consistently deem non-actionable. *See, e.g.*, *Shaw v. Digital Equip. Corp.*, 82 F.3d 1194, 1217 (1st Cir. 1996), *abrogated on other grounds by* 15 U.S.C. § 78u-4(b)(2) (explaining that courts routinely reject allegations of "rosy affirmation[s]" and "loosely optimistic statements that are so vague, so lacking in specificity, or so clearly constituting the opinions of the speaker, that no reasonable investor" could rely on them).

10

Further, Plaintiffs have not plausibly alleged reliance (justifiable or not) on any representation of fact, or even the puffery, opinions, or projections they allege in their Amended Complaint. Instead, Plaintiffs allege they relied on an "***indirect*** earnings claim," based on the MAP Program, "that misleads buyers regarding the business prospects of their BTL investment[.]" Am. Compl. ¶ 44; *see also id.* ¶ 35 (alleging, without any details required by Rule 9(b), that "BTL induced Plaintiffs by guaranteeing Plaintiffs that they would be making at least $50,000 a month" and that these "earnings representations . . . induced [Plaintiffs] into purchasing the equipment"). Not only do these "reliance" allegations contradict Plaintiffs' throwaway allegation that the MAP Program's terms were "hidden," (they patently were not), *id.* ¶ 26, these allegations cannot support a plausible allegation of justifiable reliance. Plaintiffs' reliance on their ***own interpretation*** of the MAP Program, *see id.* ¶ 44, which is unsupported by the written terms of the MAP Program and (at best) a non-actionable financial forecast, cannot support the element of reliance. *Cf. Edlow v. RBW, LLC*, 688 F.3d 26, 36–37 (1st Cir. 2012) (affirming dismissal of Massachusetts intentional and negligent misrepresentation claims where "[t]he alleged misrepresentations . . . [were] statements and promises allegedly made in the context of negotiating [an] agreement, but that were not included [ ] in that written agreement," and plaintiff's "reliance on such statements would have been neither reasonable nor justifiable").

In addition to all the deficiencies detailed above, Plaintiffs' Negligent Misrepresentation claim fails for another independent reason: BTL did not owe Plaintiffs a duty of care during the parties' arms'-length transaction. *See Breiner*, 2026 WL 114405, at *15 (denying leave to add claim of negligent misrepresentation as futile because plaintiffs "allege[d] no facts to suggest that BTL was in a special relationship with plaintiffs, or otherwise owe a duty of care to them"). In *Breiner*, this Court dismissed near-identical claims of negligent misrepresentation against BTL

11

based on a lack of duty. The same analysis applies here.

Because none of the alleged "misrepresentations" in Plaintiffs' complaint rise to the level of actionable fraud or negligent misrepresentation, the Court should dismiss the misrepresentation claims in Counts I–III with prejudice.

### C. Plaintiffs' Request for Declaratory Relief Pursuant to KRS 418.040 (Count IV) Fails as a Matter of Law.

Finally, Plaintiffs incorrectly rely on KRS 418.040 to request the Court "issue a declaratory judgment as to . . . whether the Emsculpt NEO® and Cellutone Purchase Contract is invalid and unenforceable." Am. Compl. ¶ 86. But KRS 418.040 is merely a procedural statute that permits a plaintiff to seek declaratory relief "in any action in a court of record of [the] Commonwealth [of Kentucky] having general jurisdiction." KRS § 418.040. This Court, of course, applies federal law to procedural matters and state law only to Plaintiffs' substantive claims. *Suero-Algarin v. CMT Hosp. Hima San Pablo Caguas*, 957 F.3d 30, 39 (1st Cir. 2020) (reiterating the legal principle that "federal courts sitting in diversity apply state substantive law and federal procedural law" (quotation omitted)); *see also Willis v. Vericel Corp.*, 702 F. Supp. 3d 1, 4–5 (D. Mass. 2023) (dismissing request for declaratory relief pursuant to the Texas Declaratory Judgment Act because it "is merely a procedural device and does not create any substantive rights or causes of action" (cleaned up)).

But even if the Court considers Plaintiffs' Count IV under the federal Declaratory Judgment Act, 28 U.S.C. § 2201, Plaintiffs' claim must still be dismissed. As this Court has explained, the Declaratory Judgment Act similarly does not form an independent cause of action and simply provides a procedural method of declaring a remedy for other substantive rights. *See, e.g.*, *Aldrich v. Young*, No. CA 13-10466-DPW, 2013 WL 3802436, at *8 (D. Mass. July 18, 2013), *aff'd*, No. 13-1966, 2015 WL 13926793 (1st Cir. Dec. 22, 2015) (granting motion to dismiss

remaining request for declaratory relief, explaining that "Declaratory Judgment is not a substantive source of rights; rather, the 'operation of Declaratory Judgment Act is procedural only'" (quotation omitted)). When a plaintiff's underlying substantive claims are dismissed, the Court should likewise dismiss any remaining requests for declaratory relief. *See, e.g.*, *id.*

Here, because all of Plaintiffs' substantive claims are due to be dismissed for the reasons explained above, the Court should likewise dismiss Count IV's procedural request for declaratory relief. [3]

### CONCLUSION

For all the foregoing reasons, BTL respectfully requests that the Court dismiss Plaintiffs' claims in the Amended Complaint in their entirety and with prejudice.

Dated: July 23, 2026

Respectfully submitted,

*/s/ Alejandra Reichard*
**BARNES & THORNBURG LLP**

Alejandra Reichard (admitted *pro hac vice*)
11 S. Meridian Street
Indianapolis, IN 46204-3535
Tel: (317) 236-1313
alejandra.reichard@btlaw.com

Molly E. Flynn (admitted *pro hac vice*)
1717 Arch Street, Suite 4900
Philadelphia, PA 19103-2825
Tel: (445) 201-8910
Molly.Flynn@btlaw.com

Heather B. Repicky (BBO # 663347)
One Marina Park Drive, Suite 1530
Boston, MA 02210
Tel: (617) 316-5310

---

[3] At the very least, Plaintiffs' request for declaratory relief should fall with their KCPA claim (Count I) as it is Plaintiffs' only claim which disputes the validity of the Purchase Agreement. *See* Am. Compl. ¶ 65 (Plaintiffs' Count I alleging the devices were sold "in violation of statutory and regulatory requirements"); *id.* ¶ 86 (Plaintiffs' Count IV requesting the Court declare the Purchase Agreement "invalid and unenforceable").

Fax: (617) 316-5311
hrepicky@btlaw.com

*Counsel for Defendant BTL Industries, Inc.*