**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

AIM GROUP, LLC d/b/a REVE BODY
SCULPTING, and AMY LOUISE STONE,

                                        Case No. 1:26-cv-12129-AK

         Plaintiffs,

vs.

BTL INDUSTRIES, INC., and
MEGHAN AUSTIN,

         Defendants.

_____/

## PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT BTL INDUSTRIES, INC.'S MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT

Plaintiffs, AIM GROUP, LLC d/b/a REVE BODY SCULPTING and AMY LOUISE STONE, by and through undersigned counsel, hereby file this Response in Opposition to Defendant BTL Industries, Inc.'s Motion to Dismiss, and state as follows:[1]

### INTRODUCTION

BTL's Motion to Dismiss should be denied because it fundamentally mischaracterizes both the allegations of the Amended Complaint and the governing pleading standards under Rules 8, 9(b), and 12(b)(6). The Amended Complaint does not allege mere "buyer's remorse," as BTL attempts to portray it. Rather, Plaintiffs allege a coordinated scheme whereby BTL induced them to purchase extraordinarily expensive proprietary equipment through knowingly false profitability representations, deceptive financing representations, concealed market realities, and post-sale

---

[1] Plaintiff AIM Group, LLC d/b/a Reve Body Sculpting is "AIM Group." Plaintiff Amy Louise Stone is "Ms. Stone." AIM Group and Ms. Stone are collectively "Plaintiffs." Defendant BTL Industries, Inc. is "BTL." Defendant Meghan Austin is "Ms. Austin." BTL and Ms. Austin are collectively "Defendants."

coercive pricing restraints designed to lock providers into BTL's ecosystem while preventing meaningful competition or exit.

The Amended Complaint alleges that BTL represented to Plaintiffs that providers routinely generated substantial profits from Emsculpt NEO® treatments, that sufficient consumer demand existed to sustain the mandatory pricing levels imposed by BTL, that Plaintiffs would rapidly recoup their investment, and that Plaintiffs faced little or no meaningful financial risk associated with the purchase of the equipment. Plaintiffs further allege that BTL knew these representations were false because BTL simultaneously oversaturated local markets with competing providers while coercively enforcing pricing restrictions that prevented providers from responding to actual market conditions and consumer demand.

Rather than accepting these well-pled allegations as true, as the Court must at this stage, BTL improperly asks the Court to resolve disputed factual issues, weigh competing inferences, determine the ultimate merits of Plaintiffs' claims, and impose evidentiary burdens applicable only after discovery and expert analysis. That is improper under Rule 12(b)(6). At this stage, Plaintiffs need only plausibly allege claims for relief, and the Amended Complaint more than satisfies that standard. As such, BTL's Motion to Dismiss should be denied.

## LEGAL STANDARD

In order to withstand a motion to dismiss, the complaint must allege "a plausible entitlement to relief." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 1967, 167 L.Ed.2d 929 (2007). "The complaint must set forth factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." *Turnley v. Banc of Am. Inv. Servs., Inc.,* 576 F. Supp. 2d 204 (D. Mass. 2008) (citations omitted). "Non-conclusory factual allegations in the complaint must then be treated as true, even

if seemingly incredible." *Ocasio-Hernandez v. Fortuno-Burset*, 640 F.3d 1, 12 (1st Cir. 2011). "In assessing futility, the court applies the same standard of legal sufficiency as applies to a Rule 12(b)(6) motion." *Doe*, 2026 WL 686483, at *8. "Futility means that the complaint, as amended, would fail to state a claim upon which relief could be granted." *Glassman v. Computervision Corp.*, 90 F.3d 617, 623 (1st Cir. 1996).

## ARGUMENT

### I.  Plaintiffs Agree to Dismiss Count I.

Plaintiffs agree to dismiss Count I for violation of KRS 367.170. Accordingly, Plaintiffs do not oppose dismissal of Count I.

However, Plaintiffs' agreement to dismiss Count I does not support dismissal of Counts II, III, or IV. Counts II and III are independently pleaded claims for fraud and negligent misrepresentation based on specific alleged misrepresentations. Count IV seeks declaratory relief concerning the validity and enforceability of the Purchase Contract based on an actual controversy between the parties. Those claims do not rise or fall with Count I.

### II.  Plaintiffs Adequately Allege Fraud.

"In order to state a claim for fraudulent inducement, the plaintiff must allege that the defendant 1) made a misrepresentation of material fact, 2) with the intent to induce action and 3) that the plaintiff reasonably relied on the false statement to his detriment." *NExTT Sols., LLC* v. *XOS Techs., Inc.*, 113 F. Supp. 3d 450, 459 (D. Mass. 2015).

Plaintiffs have adequately alleged each of these elements in substantial detail. First, Plaintiffs allege numerous misrepresentations of material facts made by BTL and its representative, Ms. Austin, on or about August 12, 2022, concerning the profitability, marketability, and financial viability of the Emsculpt NEO® devices and related business model.

3

Am. Compl. at ¶¶ 15-19. Specifically, Plaintiffs allege that BTL represented that providers routinely generated substantial revenues and profits from the devices, that Plaintiffs would rapidly recover their investment, that sufficient market demand existed to sustain BTL's required pricing levels, and that Plaintiffs faced limited financial risk associated with the purchase of the equipment. *Id.* at ¶ 19. Plaintiffs further allege that BTL made representations concerning expected treatment pricing, financing exposure, anticipated return on investment, and the commercial success of similarly situated providers. *Id.* Plaintiffs also allege that BTL represented to Plaintiffs that they have not and will not sell or attempt to BTL equipment to any other providers within an approximate 20-mile radius of Plaintiffs' office. Yet, Plaintiffs later discovered that Defendants attempted to sell BTL equipment to a competitor, Blue Halo, which is within walking distance from Plaintiffs' office, after Defendants sold the equipment to Plaintiffs. Id. at ¶ 18. During the August 12, 2022 meeting at Plaintiffs' office, Defendants also advised Plaintiffs that Plaintiffs would be purchasing a used Emsculpt NEO® demo, and, as a result, Plaintiffs would be purchasing the equipment at a discounted price and would be receiving the Cellutone for "free." Plaintiffs ultimately discovered that these representations were false when she went to a BTL conference on or about December 9, 2023, and spoke to another provider who advised Ms. Stone that BTL offered to sell the provider both the Emsculpt NEO® and Emsella® for a price that was about $20,000.00 less than what she paid for a supposedly used demo of the Emsculpt NEO® and the Cellutone for "free." Id. at ¶ 16-17. These are concrete factual assertions regarding present market conditions and anticipated business performance, not mere generalized puffery or non-actionable opinion.

Second, Plaintiffs adequately allege that BTL made these representations with the intent to induce Plaintiffs to purchase the devices and enter financing agreements. The Amended Complaint specifically alleges that BTL and its representatives provided these revenue projections,

4

profitability representations, and market-demand statements during the sales process for the purpose of persuading Plaintiffs to purchase extraordinarily expensive proprietary equipment and undertake substantial financial obligations. *Id.* at ¶ 19. Plaintiffs further allege that BTL had a direct pecuniary interest in inducing Plaintiffs to enter into the transactions because BTL profited from the sale of the devices, related consumables, and ongoing participation in BTL's proprietary ecosystem. *Id.* at ¶¶ 21, 23, 29-31.

Third, Plaintiffs adequately allege reasonable reliance and resulting damages. Plaintiffs allege that they relied upon BTL's representations in deciding to purchase the equipment and execute the related financing agreements. *Id.* at ¶¶ 19-21. Further, BTL possessed vastly superior knowledge concerning the actual profitability of the devices, the effects of the MAP pricing restraints, market saturation, consumer demand, provider success rates, and the practical ability of providers to compete profitably within BTL's system. Plaintiffs allege that, in reliance upon BTL's representations, they purchased the devices, incurred substantial financial obligations, invested in marketing and operational expenses, and ultimately suffered significant financial losses when the representations proved false. *Id.* at ¶¶ 21-22, 24, 35-36, 47-50.

The Amended Complaint also alleges why the representations were false when made. Plaintiffs allege that BTL knew the mandatory pricing structure was commercially unsustainable, knew that consumer demand did not support the required pricing levels, knew that providers were unable to compete profitably under the MAP regime, and simultaneously oversaturated local markets with competing providers subject to the same restraints. *Id.* at ¶¶ 44, 48-53, 56-57, 60. BTL concealed these material facts while continuing to market the devices as highly profitable business opportunities. Therefore, the Amended Complaint sufficiently states a claim for fraud.

BTL ignores the well-plead allegations contained within the Amended Complaint and incorrectly argues that Plaintiffs failed to plead fraud and negligent misrepresentation with particularity as required by Rule 9(b).  Rule 9(b) provides: "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. R. 9(b). Thus, the standard "is satisfied by an averment of the who, what, where, and when of the allegedly false or fraudulent representation." *Rodi v. S. New Eng. Sch. of Law*, 389 F.3d 5, 15 (1st Cir. 2004). Plaintiffs allege that the fraudulent misrepresentations were made by BTL's representative, Ms. Austin, on or about August 12, 2022, after BTL approached Ms. Stone. Am. Compl. at ¶¶ 15-19. Further, the Amended Complaint specifically lists fifteen misrepresentations in paragraphs 16, 18, and 19(a)-(m). As such, there is no question that Plaintiffs sufficiently plead these misrepresentations with particularity as required by Rule 9(b).

BTL argues that Plaintiffs failed to plead with particularity that BTL knew or should have known that the statements were false. That argument ignores the extensive allegations in the Amended Complaint concerning BTL's superior knowledge of the market, its internal control over pricing and provider participation, and its awareness of the actual economic performance of providers operating within the BTL system. Further, Rule 9(b) states that "[t]he other elements of fraud, such as intent and knowledge, may be averred in general terms." Fed. R. Civ. P. 9(b). At the pleading stage, these allegations are more than sufficient to plausibly allege that BTL knew or should have known its representations concerning profitability, market demand, pricing viability, and financial risk were false or misleading when made.

BTL also argues that the alleged misrepresentations are non-actionable puffery, sales talk, or merely opinions concerning future events. That argument ignores both the nature of the

statements alleged in the Amended Complaint and the well-established principle that statements framed as opinions or projections may nevertheless constitute actionable misrepresentations where they imply the existence of supporting facts known to the speaker. *Rodi* v. *S. New England Sch. Of Law*, 389 F.3d 5, 14 (1st Cir. 2004).

Non-actionable puffery is "general statements about big-picture concepts such a trust, security, reputation, and safety." *Costa v. FCA US LLC,* 542 F. Supp. 3d 83 (D. Mass. 2021). The misrepresentations at issue do not concern any such big-picture concepts, but the marketability and profitability of BTL's products. *See id.* The alleged misrepresentations were also not "optimistic, vague projections of future success" or "lacking in specificity." *See In re Access Cardiosystems, Inc.,* 404 B.R. 593 (Bankr. D. Mass. 2009), *aff'd*, 488 B.R. 1 (D. Mass. 2012). Instead, they were statements of fact that were material to Plaintiffs' reasonable analysis of Plaintiffs' prospects. *See NPS, LLC v. Ambac Assur. Corp.,* 706 F. Supp. 2d 162 (D. Mass. 2010) ("When a company makes a kind of general, rosy affirmation, these statements are puffery and cannot have been material to any reasonable analysis of the company's prospects."). For example, Defendant's alleged misrepresentations made to induce Plaintiffs into purchasing Defendant's products include, but are not limited to, the following: (i) Emsculpt® and/or Emsculpt NEO® purchases have an average payoff of one year or less; (ii) Emsculpt® and/or Emsculpt NEO® brings in 51% more new patients to practices; and (iii) BTL is doing $30 million in marketing. *See* Am. Compl. at ¶ 19. These are not generalized statements such as "great opportunity" or "industry-leading technology." Rather, they are concrete factual representations concerning existing profitability, market demand, provider success, and expected revenues that are capable of objective verification.

Moreover, the First Circuit has expressly recognized that statements framed as opinions may constitute actionable misrepresentations where they imply the existence of supporting facts. In *Rodi v. S. New England Sch. of Law*, 389 F.3d 5 (1st Cir. 2004), the court held that "[a] statement, though couched in terms of opinion, may constitute a statement of fact if it may reasonably be understood by the reader or listener as implying the existence of facts that justify the statement (or, at least, the non-existence of any facts incompatible with it)." *Id*. at 15. The court further explained that "[a] statement of opinion as to facts not disclosed [may] be interpreted ... as an implied statement that the facts known to the maker are not incompatible with his opinion." *Id*. (quoting Restatement (Second) of Torts § 539). The First Circuit specifically recognized that statements presented as optimistic opinions may be actionable where the speaker possesses contrary information rendering the statements misleading. *Id.*

The reasoning of *Rodi* directly applies here. Plaintiffs allege that BTL's profitability representations, revenue projections, and statements concerning market demand implied that BTL possessed supporting factual information demonstrating that providers could profitably operate under BTL's pricing structure and that sufficient consumer demand existed at the required MAP pricing levels. Plaintiffs further allege that BTL in fact possessed contrary information demonstrating that these representations were false or misleading, including knowledge that "the vast majority of BTL providers lost their investment" and that there was "little to no market" for the services at the required pricing levels.

Similarly, Plaintiffs allege that BTL possessed extensive proprietary knowledge concerning provider failures, market saturation, consumer demand, provider profitability, and the unsustainable nature of the MAP pricing structure because BTL monitored provider performance, controlled pricing restraints, tracked provider compliance, supplied consumables, and maintained

ongoing relationships with providers nationwide. As the Massachusetts Appeals Court recognized in *Stolzoff v. Waste Sys. Int'l, Inc.*, it is actionable for a corporation falsely to describe a project as "a great success" and "proceeding smoothly" where contrary facts are known to the speaker. 58 Mass. App. Ct. 747 (2003). Likewise, in *Briggs v. Carol Cars, Inc.*, the Supreme Judicial Court held it actionable for a car dealer to state that he "believes" a vehicle is in "good" condition while concealing known defects. 407 Mass. 391 (1990). Here, Plaintiffs similarly allege that BTL touted the profitability and success of the BTL business model while concealing known market failures, widespread provider losses, oversaturation, coercive pricing restraints, and the inability of providers to compete profitably within the BTL system.

As such, Plaintiffs sufficiently allege fraud and BTL's Motion to Dismiss should be denied in its entirety.

## III.      Plaintiffs Adequately Allege Negligent Misrepresentation.

Massachusetts law recognizes claims for negligent misrepresentation and utilizes the liability standard set forth in the Restatement (Second) of Torts § 552 (1977). *See Nycal Corp. v. KPMG Peat \*438 Marwick LLP*, 426 Mass. 491, 496, 688 N.E.2d 1368 (1998). BTL also argues that Plaintiffs' negligent misrepresentation claim fails because BTL allegedly owed no duty of care to Plaintiffs in what Defendant characterizes as a purely arm's-length commercial transaction. That argument misstates Massachusetts law governing negligent misrepresentation claims.

Massachusetts expressly recognizes negligent misrepresentation claims arising from the provision of false information in commercial transactions and applies the liability standard set forth in Section 552 of the Restatement (Second) of Torts. In *In re Drown*, 340 B.R. 428 (Bankr. D. Mass. 2006), the court explained that Massachusetts law recognizes liability where, "in the course of [its] business" or in a transaction in which it has a pecuniary interest, a defendant

9

"supplies false information for the guidance of others in their business transactions" and fails to exercise reasonable care in obtaining or communicating that information. *Id.* at 438.

As explained in *Nycal*, liability exists where the defendant supplies information to a limited group of persons for whose benefit and guidance the information is intended, and where the defendant is aware of the use to which the information will be put. 426 Mass. at 496–97. The duty arises because "one who relies upon information in connection with a commercial transaction may reasonably expect to hold the maker to a duty of care" where the maker was "manifestly aware of the use to which the information was to be put and intended to supply it for that purpose." *Id.*

That is precisely what Plaintiffs allege here. Plaintiffs allege that BTL, through its sales representatives and financing partners, supplied detailed financial and operational information to Plaintiffs for the specific purpose of inducing Plaintiffs to purchase BTL equipment and enter financing agreements. Plaintiffs further allege that BTL provided revenue projections, profitability estimates, treatment pricing information, market-demand representations, financing representations, and return-on-investment calculations for the express purpose of guiding Plaintiffs' business decision whether to purchase the equipment and undertake substantial financial obligations. BTL was therefore "manifestly aware" of the precise use to which the information would be put and allegedly intended Plaintiffs to rely upon it in deciding whether to enter the transaction.

Accordingly, the fact that the parties were engaged in a commercial transaction does not eliminate BTL's duty under Massachusetts law. To the contrary, Section 552 specifically applies to negligent misrepresentations made in business and commercial transactions involving pecuniary interests. Plaintiffs therefore sufficiently allege the existence of a duty of care, and BTL's argument to the contrary lacks merit.

**IV.    Plaintiffs' Request for Declaratory Relief is Proper.**

BTL argues that Plaintiffs' request for declaratory relief pursuant to KRS 418.040 fails as a matter of law because KRS 418.040 is merely a procedural statute. While it is true that this Court applies federal law to procedural matters, Plaintiffs' request for declaratory relief is properly grounded in both state substantive law and the federal Declaratory Judgment Act. Plaintiffs request that the Court issue a declaratory judgment as to whether the Emsculpt NEO® and Cellutone Purchase Contract is invalid and unenforceable because it was illegal for BTL to sell the BTL equipment to Plaintiffs. Plaintiffs allege that the BTL equipment are class II medical devices that may only be sold to medical professionals, and that BTL knew that neither Ms. Stone nor anyone at Reve Body Sculpting were physicians or licensed practitioners. Plaintiffs allege that there is a bona fide dispute between Plaintiffs and BTL which creates an actual and present need for declaration from the Court. These allegations support a viable request for declaratory relief. While the Declaratory Judgment Act does not create an independent cause of action, it provides a procedural method of declaring a remedy for substantive rights. Here, Plaintiffs' substantive claims in Counts II and III provide the underlying basis for declaratory relief. Plaintiffs seek a declaration that the Purchase Contract is invalid and unenforceable based on the substantive violations of law alleged in those counts.

BTL further argues that because all of Plaintiffs' substantive claims are allegedly due to be dismissed, the Court should likewise dismiss Count IV's procedural request for declaratory relief. However, as demonstrated above, Plaintiffs' substantive claims are well-pled and should not be dismissed. Accordingly, Plaintiffs' request for declaratory relief remains viable and should not be dismissed

**CONCLUSION**

The Amended Complaint easily satisfies the pleading requirements of Rules 8, 9(b), and 12(b)(6). Plaintiffs have alleged detailed facts identifying the specific misrepresentations made by BTL and its representatives, when and where those statements were made, why they were false, BTL's knowledge of their falsity, Plaintiffs' reasonable reliance, and the substantial damages that resulted. Far from alleging mere "buyer's remorse," Plaintiffs allege a deliberate scheme to induce the purchase of costly equipment through false representations regarding profitability, market demand, pricing viability, exclusivity, financing exposure, and anticipated returns, while concealing information concerning market saturation, provider losses, and the unsustainable nature of BTL's business model.

Plaintiffs have sufficiently stated claims for fraud, negligent misrepresentation, and declaratory relief. The Amended Complaint pleads fraud with the particularity required by Rule 9(b), alleges that BTL supplied false information for the guidance of Plaintiffs in a commercial transaction giving rise to a viable negligent misrepresentation claim, and establishes an actual controversy concerning the validity and enforceability of the Purchase Contract. BTL's Motion improperly asks the Court to resolve disputed factual issues and weigh the merits of Plaintiffs' claims before discovery. Accordingly, except as to Count I, which Plaintiffs agree should be dismissed, the Court should deny Defendant BTL Industries, Inc.'s Motion to Dismiss in its entirety and permit Counts II, III, and IV to proceed.

**CERTIFICATE OF SERVICE**

I certify that on August 6, 2026, this document, filed through the ECF system, will be sent electronically to the parties or their counsel who are registered participants as identified on the Notice of Electronic Filing and, if not so registered, that paper copies will be emailed to such

12

parties or their counsel.

**Respectfully submitted,**

/s/ Ariane Wolinsky
ARIANE WOLINSKY, ESQ.
Florida Bar No.: 51719
MANSFIELD BRONSTEIN & STONE, LLP
*Attorneys for Plaintiffs*
200 E. Broward Blvd., Suite 1250
Fort Lauderdale, FL 33301
Tel: 954-601-5600
Fax 954.961.4756
litigation@mblawpa.com

-and-

COHEN SEGLIAS PALLAS GREENHALL
& FURMAN, P.C.
*Attorneys for Plaintiff*

/s/ Marian A. Kornilowicz
Marian A. Kornilowicz, Esq.
525 William Penn Place, Suite 3005
Pittsburgh, PA  15219
Tel: 412-434-5530