# EXHIBIT A

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| AIM GROUP, LLC d/b/a REVE BODY SCULPTING and AMY LOUISE STONE,<br><br>Plaintiffs,<br><br>v.<br><br>BTL INDUSTRIES, INC. and MEGHAN AUSTIN,<br><br>Defendants. | Civil Action No. 1:26-cv-12129-AK |

**DEFENDANT BTL INDUSTRIES, INC.'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT**

Plaintiffs' Opposition confirms that their Amended Complaint fails to state a single plausible claim for relief. In the face of irrefutable authority, Plaintiffs have conceded their consumer protection claim (Count I) is subject to dismissal. For their remaining claims of misrepresentation, however, Plaintiffs fail to meaningfully grapple with the legal deficiencies BTL identified. Instead, Plaintiffs resort to attorney argument untethered to the actual allegations in their pleading, advance unsupported legal arguments, assert brand-new legal theories, and ignore directly on-point authority from this Court that compels dismissal. And Plaintiffs' perfunctory defense of their standalone request for declaratory relief confirms that they are seeking an impermissible advisory opinion. For the reasons set forth below and in BTL's opening memorandum, the Court should dismiss Plaintiffs' claims with prejudice.

## I. Plaintiffs' Misrepresentation Claims Fail Both Procedurally and Substantively

### A. Plaintiffs' Conclusory Allegations of Scienter Do Not Satisfy Rule 9(b)

Plaintiffs contend they have satisfied Rule 9(b) by identifying the speakers, date, and substance of numerous alleged misrepresentations in the Amended Complaint. *See* Opp. at 3–4.

But Rule 9(b) requires far more than merely listing statements and labeling them false. It is not enough for a plaintiff to specify the "who, what, where, and when" of the alleged fraud, she must *also* specifically identify the "facts that make it reasonable to believe that defendant knew that a statement was materially false or misleading." *N. Am. Catholic Educ. Programming Found., Inc. v. Cardinale*, 567 F.3d 8, 13 (1st Cir. 2009) (quoting *Greenstone v. Cambex Corp.*, 975 F.2d 22, 25 (1st Cir. 1992) (Breyer, J.)). Rule 9(b) requires this level of specificity for *each* alleged misrepresentation.

Instead of individually or categorically analyzing their allegations, Plaintiffs instead claim that BTL concealed information about the *voluntary* MAP Program—which Plaintiffs incorrectly describe as a "mandatory pricing structure"—and an "oversaturated" market somehow demonstrate BTL knew every statement was materially false or misleading. Opp. at 5–6. This conclusory attorney argument fails to reasonably explain why any specific representation was false at all, much less false *when made*. *Cf. N. Am. Catholic Educ.*, 567 F.3d at 13 (explaining plaintiff "provide[d] no information in [its] complaint to suggest that the defendants feigned their original expressed intention," and that conclusory allegations that "[defendant] never intended to follow its business plan" lacked the "particulars that suggest scienter"); *Efron v. UBS Fin. Servs. Inc. of P.R.*, 96 F.4th 430, 438 (1st Cir. 2024) (affirming denial of leave to amend for futility when plaintiff's "conclusory allegations as to [defendant's] fraudulent intent" did not "credibly suggest that [defendant] acted with specific intent to deceive").

For example, Plaintiffs' argument fails to address why it was false when Ms. Austin purportedly represented that "BTL will provide a bus tour that will bring Plaintiffs loads of customers," Am. Compl. ¶ 19(m), that "BTL is doing $30 million in marketing," *id.* ¶ 19(j), that providers often "pay off [the equipment] within a year or less," *id.* ¶ 19(c), that BTL would

"provide Plaintiffs with a billboard to market Plaintiffs' BTL equipment," *id.* ¶ 19(k), or the estimate that "the price of each equipment" would rise in the next year, *id.* ¶ 19(i). *See generally id.* ¶¶ 19(a–m). Plaintiffs cannot satisfy Rule 9(b) by offering a conclusory, one-size-fits-all theory of scienter for all their alleged misrepresentations. *Cf. Holland v. Piedmont Airlines, Inc.*, No. 2:25-cv-00478-SDN, 2026 WL 705335, at *9 (D. Me. Mar. 13, 2026) (dismissing fraud claims because plaintiff's allegations that "the mere fact that [defendant] regularly conducted interviews and engaged in payroll-related tasks [did] not support an inference that she knowingly or recklessly made false representations" in a job interview).[1]

And Plaintiffs' claims that later-acquired knowledge somehow made BTL's statements false also fall short of Rule 9's specificity requirements. For example, Plaintiffs rely on a later-dated offer by BTL to sell *different* equipment to another provider for a different price somehow demonstrates BTL misrepresented its "present market conditions and anticipated business performance" in its representations on August 12, 2022. Opp. at 4. As BTL explained in its opening brief, that later-dated offer does not render any of the alleged statements by Ms. Austin on August 12, 2022 false, Dkt. 92 at 8–9, and certainly not misrepresentations of "market conditions" or BTL's "anticipated business performance" at the time of Plaintiffs' purchase, Opp. at 4. Similarly, Plaintiffs' allegation that BTL "attempted to sell BTL equipment to a competitor" after their purchase does not render Ms. Austin's alleged statements false at the time they were made or implicate BTL's broader financial performance or the performance of other providers using BTL equipment. *See id.*[2] None of Plaintiffs' arguments provide the "particular[ facts] that suggest

[1] Plaintiffs' reliance on *Briggs v. Carol Cars*, 407 Mass. 391 (1990) and *Stolzoff v. Waste Sys. Int'l, Inc.*, 58 Mass. App. Ct. 747 (2003), is misplaced. Neither of these state-court cases addressed whether the claims of misrepresentation satisfied Rule 9(b).

[2] It is also unclear how Plaintiffs have been harmed by that alleged offer. BTL merely extending an offer to another provider, without acceptance, does not saturate the market, dilute Plaintiffs' customer base, or otherwise injure Plaintiffs.

scienter" required by Rule 9(b). *N. Am. Catholic Educ.*, 567 F.3d at 13.

Without any facts to support their allegations of misrepresentation, Plaintiffs' generalized argument is the hallmark of a deficient fraud claim. Rule 9(b) does not permit this approach. *See id.*

**B. The Alleged Representations Are Non-Actionable Puffery, Opinion, and Projection, On Which Plaintiffs Could Not Have Reasonably Relied**

Plaintiffs claim that cherry-picked statements from their Amended Complaint represent "concrete factual representations" rather than opinion, puffery, or projection. Opp. at 4. But merely labeling a statement as "concrete" does not make it so. In its opening memorandum, BTL explained how each of the alleged misrepresentations in Plaintiffs' Amended Complaint (including those Plaintiffs summarize in their Opposition) constitute non-actionable puffery, opinion, or projection. Dkt. 92 at 9–10.

Even if these were actionable misrepresentations, however, Plaintiffs hardly attempt to explain how they justifiably relied on those representations. *See* Opp. at 4. Indeed, Plaintiffs devote a single paragraph—lacking any legal support—to rebut BTL's arguments on this point. *See* Opp. at 5. The fact that Plaintiffs relied on BTL's representations when purchasing the devices is far from enough to plausibly allege reasonable and justifiable reliance under Massachusetts law. *See Collins v. Huculak*, 783 N.E.2d 834, 839 (Mass. Ct. App. 2003) (a plaintiff claiming fraud "is required to use his senses, and cannot recover if he blindly relies upon a misrepresentation the falsity of which would be patent to him if he utilized his opportunity to make a cursory examination or investigation" (quotation omitted)). As BTL explained in its opening memorandum—and to which Plaintiffs have no response—Plaintiffs' "reliance" was based on their own faulty interpretation of the MAP Program that is unsupported by the terms of the Sales Agreement. *See* Dkt. 92 at 11; *cf. Edlow v. RBW, LLC*, 688 F.3d 26, 36–37 (1st Cir. 2012) (affirming dismissal of

misrepresentation claims where plaintiff lacked justifiable reliance on "statements and promises allegedly made in the context of negotiating [an] agreement, but that were not included [ ] in that written agreement").

Without justifiable reliance on any actionable representation, Plaintiffs' Counts II and III fail as a matter of law.

**C. Plaintiffs' New Fraudulent Omissions Theory Fails**

In their opposition, Plaintiffs appear to pivot from a theory of affirmative misrepresentations and instead advance a theory of fraudulent *omissions*. Opp. at 5–9; *see also id.* at 5–6 (alleging BTL "concealed" material facts about the MAP Program, "consumer demand," "profitability," and market saturation). Plaintiffs' new theory relies principally on *Rodi v. S. New England School of Law*, 389 F.3d 5 (1st Cir. 2004), for the proposition that opinions may be actionable where they "imply the existence of supporting facts known to the speaker." Opp. at 6–7. To be clear, Plaintiffs alleged claims of *affirmative* misrepresentation in their Amended Complaint, and it is improper for Plaintiffs to amend their complaint through argument in an opposition brief. *See, e.g.*, *Caldwell v. Cambra*, 802 F. Supp. 3d 8, 42 n.10 (D. Mass. 2025) ("[A] plaintiff cannot amend his complaint by adding new allegations or theories in an opposition to a motion to dismiss.").

Even if this Court allows Plaintiffs to amend their theory on opposition, this new theory fails. First, Plaintiffs' reliance on *Rodi* is misplaced. In *Rodi*, the First Circuit reversed dismissal of fraud claims against a law school that stated it "had the capacity to achieve near-term accreditation," despite knowing that statement was materially false due to the school's "substantial deficiencies" that would prevent accreditation. 389 F.3d at 13, 16. Here, by contrast, Plaintiffs' allegations of "contrary information" are entirely conclusory. Plaintiffs assert that BTL had "knowledge that 'the vast majority of BTL providers lost their investment' and that there was 'little

to no market' for the services at the required pricing levels." Opp. at 7–8. In fact, Plaintiffs' own allegations (leftover from abandoned antitrust theories) undermine their conclusory omissions theory. Plaintiffs allege the existence of successful competing BTL providers with established practices, Am. Compl. ¶¶ 38–39, a thriving "secondary market" for BTL devices at "75% - 90%" discounts, *id.* ¶ 42, and that the market has been "flood[ed]" with BTL devices, *id.* ¶¶ 44, 54. These allegations of publicly known competition in the direct and secondary markets are fundamentally inconsistent with the premise that BTL concealed material information about failing market conditions.

Further, Plaintiffs' conclusory assertions that BTL "possessed contrary information" is precisely the type of unsupported allegation that Rule 9(b) is designed to screen out. Opp. at 8. Plaintiffs identify no documents, no internal communications, no data, and no specific facts demonstrating what BTL knew or when. *See Alternative Sys. Concepts, Inc. v. Synopsys, Inc.*, 374 F.3d 23, 29 (1st Cir. 2004) (requiring "specific detail" to support misrepresentation allegations); *see supra* § I(A). Again, Plaintiffs' claims of fraud are both procedurally and substantively deficient.

In any event, BTL had no duty to disclose publicly known market conditions to Plaintiffs. Under Massachusetts law, a viable fraud by omissions claim requires plaintiffs to "allege **both** concealment of material information and a **duty requiring disclosure**." *McCabe v. Ford Motor Co.*, 720 F. Supp. 3d 14, 30 (D. Mass. 2024) (quotation omitted) (emphasis added); *see also Squeri v. Mount Ida Coll.*, No. 18-12438-RGS, 2019 WL 2249722, at *3 (D. Mass. May 24, 2019), *aff'd* 954 F.3d 56 (1st Cir. 2020) (dismissing negligent misrepresentation and fraudulent omissions claims where college-defendant had no duty to disclose to its students its publicly available financial information, which revealed defendant was struggling financially despite its

representation that it was "financially stable"). It is undisputed that BTL and Plaintiffs were merely engaged in an arms'-length transaction for the purchase of equipment. Plaintiffs have not attempted to establish (nor could they) that they have a fiduciary relationship with BTL or any other facts that would establish an affirmative duty to disclose market facts. *See McCabe*, 720 F. Supp. 3d at 30 (explaining that a duty arises only when "(i) there is a fiduciary or other similar relation of trust and confidence, (ii) there are matters known to the speaker that he knows to be necessary to prevent his partial or ambiguous statement of the facts from being misleading, or (iii) the nondisclosed fact is basic to, or goes to the essence of, the transaction" (quotation omitted)); *see also Mark Breiner DDS, LLC v. BTL Indus., Inc.*, No. CV 24-12413-FDS, 2026 WL 114405, at *15 (D. Mass. Jan. 15, 2026) (denying leave to add negligent misrepresentation claim based on identical facts because "no facts [] suggest that BTL was in a special relationship with plaintiffs, or otherwise owed a duty of care to them"). Plaintiffs' new theory thus fails on every level.

### D. Plaintiffs' Negligent Misrepresentation Claim Independently Fails Because BTL Owed No Duty of Care

Plaintiffs contend that BTL owed a duty of care because BTL supplied information "for the guidance of others" in business transactions. Opp. at 9–10, 13. But this Court squarely rejected that theory in *Breiner*.

In *Breiner*, this Court denied leave to add a negligent misrepresentation claim as futile because "the proposed second amended complaint allege[d] no facts to suggest that BTL was in a special relationship with plaintiffs, or otherwise owed a duty of care to them." *Breiner*, 2026 WL 114405, at *15 (analyzing a near-identical complaint brought by Plaintiffs' counsel). The Court emphasized that the "ordinary commercial adversary bargainer ordinarily has no duty to use care in supplying information to those with whom he bargains." *Id.* (quoting Dan B. Dobbs et al., *The Law of Torts* § 667 (2d ed. 2025)). Indeed, unless "a party expresses concern about a special aspect

of an agreement and the importance of it to her," there is no duty of care in an arms'-length commercial transaction like that between Plaintiffs and BTL. *Broderick v. PNC Mortg. Corp.*, No. 11-10047-JLT, 2013 WL 6909531, at *2 (D. Mass. Dec. 30, 2013) (citing *Golber v. BayBank Valley Trust Co.*, 704 N.E.2d 1191, 1194 (Mass. Ct. App. 1999)). Plaintiffs' Amended Complaint lacks any allegation that would support such a duty.

In their Opposition, Plaintiffs do not distinguish *Breiner*, explain why the result should be different here, or even acknowledge its existence. Their reliance on *In re Drown*, 340 B.R. 428 (Bankr. D. Mass. 2006), and *Nycal Corp. v. KPMG Peat Marwick LLP*, 688 N.E.2d 1368 (Mass. 1998), is unavailing. For example, the defendant in *Nycal* was in the business of supplying information—*i.e.*, an accountant—not a manufacturer engaged in an arms' length sale of equipment. Just as in *Breiner*, BTL is a medical device manufacturer and the parties' relationship was a straightforward commercial transaction. There is nothing in Plaintiffs' Amended Complaint that suggests that Plaintiffs made BTL "manifestly aware of the use" they intended to put the alleged sales pitch, or that BTL "intended to supply it for that purpose." *Nycal*, 699 N.E.2d at 1372 (quoting Restatement (Second) of Torts § 552 (1977); *see also id.* (explaining that "[a] user of commercial information cannot reasonably expect its maker to have undertaken to satisfy this obligation unless the terms of the obligation were known to him" (quoting Restatement (Second) § 552).

Because Plaintiffs' negligent misrepresentation claim is materially indistinguishable from the pleading this Court found futile in *Breiner*, the Court should dismiss Count III with prejudice.

## II. Plaintiffs' Declaratory Relief Claim Requests an Impermissible Advisory Opinion.

Despite pleading their request for declaratory relief under KRS 418.040, Plaintiffs now pivot and make a perfunctory argument for this Court to instead entertain their request under the federal Declaratory Judgment Act, 28 U.S.C. § 2201. Plaintiffs' request is unfounded. Indeed,

Plaintiffs do not cite a single case or authority to support their position. The Court should consider Plaintiffs' underdeveloped argument waived. *See, e.g.*, *In re DiVittorio*, 670 F.3d 273, 288 (1st Cir. 2012) (finding plaintiff's argument waived because he "include[d] little explanation and no citation to authority," explaining that courts "regularly have considered such perfunctory arguments to be waived"); *United States v. Zannino,* 895 F.2d 1, 17 (1st Cir. 1990) (finding perfunctory argument waived because "[i]t is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones"). And if the Court considers Plaintiffs' argument, it fails as a matter of law.

Plaintiffs admit that the Declaratory Judgment Act does not provide an independent cause of action and that it simply provides a procedural method of declaring a remedy for other substantive rights. *See* Opp. at 11. Despite this admission, Plaintiffs make the conclusory assertion that this Court should entertain their request for declaratory relief because "there is a bona fide dispute . . . which creates an actual and present need for a declaration from the Court." Opp. at 11. Plaintiffs are incorrect.

The Declaratory Judgment Act requires an "actual controversy" between the parties. 28 U.S.C. § 2201; *see SPARTA Ins. Co. v. Pa. Ins. Co.*, 621 F. Supp. 3d 169, 176 (D. Mass. 2022) (explaining that the Act's "'case of actual controversy'" requirement "refers to the types of 'Cases' and 'Controversies' that are justiciable under Article III" (quotation omitted)). But there is no controversy about the validity of the Sales Agreement before the Court. Having conceded Count I is subject to dismissal, Plaintiffs lack any theory, claim, or controversy where the validity of the contract is at issue. What Plaintiffs truly seek is an impermissible advisory opinion. It is axiomatic that "[t]he judgment in a suit for declaratory judgment ***must be responsive to the pleadings and***

***issues presented***[,]" and that "a judgment which ***goes beyond the issues presented*** constitutes an advisory opinion upon a hypothetical basis, which the court cannot give." *Diaz–Fonseca v. Puerto Rico*, 451 F.3d 13, 42 (1st Cir. 2006) (reversing district court's grant of declaratory relief when the claims did not support the declaratory relief granted) (emphasis added) (quoting *Bus. Men's Assurance Co. v. Sainsbury,* 110 F.2d 995 (10th Cir.1940)); *see, e.g.*, *Curran v. Camden Nat'l Corp.*, 477 F. Supp. 2d 247, 265 (D. Me. 2007) (dismissing plaintiffs' request for declaratory relief because it derived from counts that were subject to dismissal, which left "no actual controversy between the parties," and explaining that "to declare relief at this juncture would be to issue an advisory opinion").

Finally, the very text of the Declaratory Judgment Act grants this Court broad discretion whether to exercise jurisdiction over a request for declaratory relief. 28 U.S.C. § 2201 ("In a case of actual controversy within its jurisdiction . . . [a court] ***may*** declare the rights and other legal relations of any interested party seeking such declaration" (emphasis added)); *see also DeNovellis v. Shalala*, 124 F.3d 298, 313 (1st Cir. 1997) (explaining that "[t]he Declaratory Judgment Act is 'an enabling Act, which confers a discretion on the courts rather than an absolute right upon the litigant'; courts have broad discretion to decline to enter a declaratory judgment" (quotation omitted)). None of Plaintiffs' allegations of misrepresentation rely in any way on Plaintiffs' allegations regarding the validity of the Sales Agreement. *Cf.* Am. Compl. ¶¶ 68–80. Accordingly, a declaration regarding the validity or legality of the Sales Agreement would neither "serve a useful purpose in clarifying and settling the legal relations" at issue in Plaintiffs' fraud-based claims nor "terminate and afford relief" from the broader controversy (*i.e.*, BTL's alleged misrepresentations about its "market conditions and anticipated business performance," Opp. at 4). *See Mueller Sys., LLC v. Robert Teti & Itet Corp.*, 199 F. Supp. 3d 270, 281–82 (D. Mass. 2016) (declining to

consider request for declaratory relief because, among other reasons, a declaratory judgment would not finalize the parties' overall controversy or otherwise serve a useful purpose). Instead, Plaintiffs' request would amount to no more than an impermissible advisory opinion.

Plaintiffs have agreed to dismiss their *only* claim where the validity of the Sales Agreement was germane to their relief. Because there is no reason for the Court to exercise jurisdiction over Plaintiffs' request for declaratory relief, the Court should dismiss Count IV.

## CONCLUSION

For all the foregoing reasons, as well as those set forth in BTL's Memorandum of Law in Support of its Motion to Dismiss (Dkt. 92), Plaintiffs' Amended Complaint fails to state any claim upon which relief can be granted. Indeed, Plaintiffs have already agreed to dismiss their deficient consumer protection claim (Count I). Opp. at 3. BTL respectfully requests that the Court dismiss Plaintiffs' remaining claims in the Amended Complaint in their entirety and with prejudice.

Dated: September 2, 2026

Respectfully submitted,

*/s/ Alejandra Reichard*
**BARNES & THORNBURG LLP**

Alejandra Reichard (admitted *pro hac vice*)
11 S. Meridian Street
Indianapolis, IN 46204-3535
Tel: (317) 236-1313
alejandra.reichard@btlaw.com

Molly E. Flynn (admitted *pro hac vice*)
1717 Arch Street, Suite 4900
Philadelphia, PA 19103-2825
Tel: (445) 201-8910
Molly.Flynn@btlaw.com

Heather B. Repicky (BBO # 663347)
One Marina Park Drive, Suite 1530
Boston, MA 02210
Tel: (617) 316-5310
Fax: (617) 316-5311

hrepicky@btlaw.com

*Counsel for Defendant BTL Industries, Inc.*